UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN J. RUIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CORRECTIONAL OFFICER M. SAWAYA, et al.,<br><br>    Defendants. | Case No. 11-cv-03126-JST (PR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS; DIRECTIONS TO CLERK**<br><br>Re: Dkt. Nos. 65, 68 |

Plaintiff, a state prisoner, filed a pro se prisoner complaint under 42 U.S.C. § 1983, arguing that defendants Correctional Officers M. Sawaya ("Sawaya"), N. Daharsh ("Daharsh"), and J. Shaw ("Shaw') used excessive force upon him, in violation of the Eighth Amendment, and Daharsh and Shaw were deliberately indifferent to his safety, in violation of the Eighth Amendment. On July 15, 2013, defendants filed a motion for summary judgment.[1] Plaintiff has filed an opposition, and defendants have filed a reply. Having carefully considered the papers submitted, defendants' motion for summary judgment is DENIED.

**FACTUAL BACKGROUND**

The following facts are viewed in the light most favorable to plaintiff.

On November 28, 2010, plaintiff was being escorted to his cell by Sawaya and Daharsh. (Compl. ¶ 8.) Plaintiff placed his hands behind his back through the cuff-slot of the cell door, and Sawaya cuffed plaintiff's wrists and yanked them through the cuff slot, causing plaintiff pain. (Id. ¶ 10.) Sawaya then twisted plaintiff's right wrist with force, again causing plaintiff pain. (Id. ¶

---

[1] Defendants' administrative motion to file under seal Exhibit C to the Barnts Declaration is GRANTED.

11.) Plaintiff responded, "Hey, what the fuck?" (Id. ¶ 12.) After plaintiff's cell door opened, Sawaya pulled plaintiff by his wrist and forearm backwards out of the cell. (Id. ¶ 13.)

Although not required, Sawaya gave plaintiff a "hands on" escort, meaning that one or both escorting officers hold on to the inmate's arm during the escort. (Id. ¶ 15.) Sawaya performs "hands on" escorts as a regular practice. (Decl. Sawaya ¶ 5.) Plaintiff has never received a "hands on" escort before. (Compl. ¶ 16.) During the escort, Sawaya was on plaintiff's right side, and Daharsh was on plaintiff's left side with his baton drawn. (Decl. Sawaya ¶ 5.)

Plaintiff again asked Sawaya what "his problem" was, and told him that "this was not necessary," to which Sawaya responded by yanking, jerking, pulling, and twisting plaintiff's right wrist back and upward behind plaintiff's back. (Compl. ¶ 18.) Sawaya asked plaintiff if they were "going to have a problem," to which plaintiff responded in the negative. (Id. ¶¶ 18-19.) Shaw and Daharsh observed these events. (Id. ¶¶ 22-23.)

Plaintiff asked for Sawaya's name several times, and Sawaya refused to give it. (Id. ¶¶ 20, 27.) After plaintiff asked for Sawaya's name the second time, Sawaya stopped the escort, and yanked and twisted plaintiff's arm up behind his back. (Id. ¶ 28.) Then Sawaya continued the escort and kicked plaintiff's heel, causing plaintiff to lunge forward, and Sawaya yanked plaintiff's arms to right him. (Id. ¶ 29.) When Sawaya escorted plaintiff into the housing unit, he again applied force to Sawaya's wrist, arm, and shoulder. (Id. ¶ 31.)

While waiting for a security triangle bar to put on plaintiff's handcuffs, plaintiff turned his head slightly to see Sawaya's name tag. (Id. ¶ 34.) At that time, Sawaya applied force to plaintiff's wrist, arm, and shoulder, forcing plaintiff to look forward, slamming plaintiff's face into the frame of the metal cell door. (Id.) This caused plaintiff's lip to bleed. (Id.)

Two hours after defendants left plaintiff, plaintiff requested medical attention. (Id. ¶ 39.) Nurse Williams examined plaintiff and asked defendant Shaw what had happened. (Id. ¶ 45.) Shaw stated that plaintiff had looked "puffed up" when Sawaya pulled plaintiff out of the cell and that plaintiff was lucky that Sawaya did not knock plaintiff down face first into the ground. (Id. ¶ 46.) Plaintiff was observed with a superficial cut and swelling on his lower lip, as well as a four-

inch bruise on the interior of his deltoid on his right arm. (Decl. Barnts, Exs. B, C at 28.). Plaintiff was later diagnosed with a rotator cuff strain of his right shoulder. (Id., Ex. C at 6; Decl. Williams ¶ 5.) Nurse Williams told plaintiff that the injuries and pain would take approximately six months to a year to heal, and that the right shoulder would never be the same. (Compl. ¶ 50.)

As a result of these events, plaintiff was issued a rules violation report for willfully resisting a peace officer. (Id. ¶ 51.) On January 11, 2011, plaintiff was found "not guilty" of the offense, but guilty of an "administrative offense" and issued a verbal reprimand. (Id.)

Defendants' version of events differs slightly. Sawaya maintains that throughout the escort, plaintiff flexed his right arm and twisted his body. (Decl. Sawaya ¶¶ 5-6.) Daharsh observed that plaintiff attempted several times to pull his right arm away from Sawaya. (Decl. Daharsh ¶¶ 5-6.) At some point during the escort, Shaw observed that plaintiff appeared agitated, and decided to follow the escort. (Decl. Shaw ¶ 6.) Sawaya ordered plaintiff several times to face forward and not attempt to turn. (Decl. Sawaya ¶ 6; Decl. Shaw ¶ 7.) Plaintiff flatly denies that he flexed his right arm, attempted to turn toward Sawaya, or pulled his arm away from Sawaya. (Decl. Pl. ¶ 6.)

## DISCUSSION

### I. Motion for Summary Judgment

#### A. Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

3

party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, provided it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge).[2]

**B.     Analysis**

---

[2] Plaintiff has submitted: (1) a verified complaint; (2) a sworn declaration with his opposition; and witness declarations.

Defendants move for summary judgment. They argue that Sawaya did not use unnecessary force against plaintiff in a malicious or sadistic manner, and that they are entitled to qualified immunity.[3] They also assert that Shaw and Daharsh are entitled to summary judgment because they were not aware of any risk of serious harm to plaintiff, and that they are entitled to qualified immunity. The Court addresses each argument in turn.

1. Excessive Force

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson, 503 U.S. at 9 (1992)) (internal quotations omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7.

---

[3] Defendants also argue that plaintiff does not allege any facts to demonstrate that Shaw or Daharsh used excessive force against him. In plaintiff's opposition, plaintiff appears to abandon his initial allegation that Shaw and Daharsh also used excessive force against him, and does not allege any facts linking the actions of either Shaw or Daharsh to his claim of excessive force. Thus, they are entitled to summary judgment on this claim.

5

"Unreasonable force claims are generally questions of fact for a jury." Hervey v. Estes, 65 F3d 784, 791 (9th Cir. 1995). Here, viewing the evidence in the light most favorable to plaintiff, there is a question of fact at least as to the need for the application of force, and whether the threat was reasonably perceived by Sawaya. Plaintiff asserts that he did not attempt to turn around, nor did he attempt to pull his arm away from Sawaya. Defendants' statements flatly contradict this. Assuming that some force was warranted, there is a material issue of fact regarding the amount that was necessary. That is, the appropriate level of force depends on whose version of the events one believes. Therefore, Sawaya is not entitled to summary judgment.

Sawaya also argues that he is entitled to qualified immunity. The qualified immunity analysis is separate from the Eighth Amendment excessive force analysis. See Marquez v. Gutierrez, 322 F.3d 689, 691 (9th Cir. 2003). The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 236 (2009). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

Thus, a guard can do an act which would violate an inmate's Eighth Amendment right but still be entitled to qualified immunity if a reasonable officer in his position would have believed

that his response was a good faith effort to restore discipline. See Marquez, 322 F.3d at 692-93 (guard who shot passive, unarmed inmate standing near a fight between other unarmed inmates when no inmate was in danger of great bodily injury would inflict unnecessary and wanton pain, but was entitled to qualified immunity because a reasonable official standing where the guard was standing (i.e., in a tower 360 feet away from the disturbance) could perceive that both plaintiff and another inmate were kicking a third inmate and threatening him with serious injury or death and that the third inmate was unable to protect himself – even if no kick was actually administered by plaintiff); cf. Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a prisoner who was on the ground and in handcuffs).

Defendants bear the burden of establishing that their actions were reasonable, even if they violated plaintiff's constitutional rights. See Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995). Sawaya claims he is entitled to qualified immunity because there is no evidence that he harbored a malicious or sadistic intent. However, the possible inferences to be drawn from the evidence prevent the Court from granting summary judgment. According to plaintiff, Sawaya repeatedly yanked and jerked his arm, and slammed his face into the cell door without provocation. Under plaintiff's version, there is no "reasonable mistake" under which Sawaya could have reasonably believed in the necessity or legality of his conduct. See Santos v. Gates, 287 F3d 846, 855 n.12 (9th Cir. 2002) (declining to grant qualified immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law, may depend upon the jury's resolution of the disputed facts and the inferences it draws therefrom").

In sum, evaluation of plaintiff's excessive force claim depends principally on credibility determinations and the drawing of factual inferences from circumstantial evidence, both of which are the traditional functions of the jury. Additionally, "because questions of reasonableness are

not well-suited to precise legal determination," <u>Chew v. Gates</u>, 27 F3d 1432, 1440 (9th Cir. 1994), the jury should be allowed to assess whether the force used by the officers was excessive. Accordingly, the Court rejects Sawaya's assertion of qualified immunity.

### 2. Deliberate indifference to safety

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. See <u>id.</u> at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See <u>id.</u> However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. See <u>id.</u> at 842; <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995) (recognizing that the Eighth Amendment requires that prison officials intervene on behalf of a prisoner if he has knowledge that other officers are violating the prisoner's constitutional rights). This is a question of fact. <u>Farmer</u>, 511 U.S. at 842.

This duty extends to a prison official that is aware of a specific risk of harm to the plaintiff only if he has a reasonable opportunity to intervene. See <u>Robins</u>, 60 F.3d at 1442. Thus, to prevail on a motion for summary judgment, the moving party carries the burden of demonstrating that the officer had no reasonable opportunity to intervene. <u>Id.</u> (denying motion for summary judgment because "officers failed to carry their burden" of showing that they could not have prevented use of excessive force).

Based upon the foregoing, if plaintiff has provided evidence to defeat summary judgment

8

that Sawaya's conduct amounted to an Eighth Amendment violation, then, similarly, Shaw and Daharsh may be liable potentially for failure to intervene and prevent the constitutional violation. See United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir.1994) (finding liability for failure to intervene where one officer witnesses another striking blows), rev'd on other grounds, 518 U.S. 81 (1996).

Here, the parties agree that Shaw and Daharsh were present during plaintiff's hands-on escort and specifically, were present immediately before and after Sawaya yanked and twisted plaintiff's arm, and slammed plaintiff's face into the cell bars. Moreover, defendants do not allege that Shaw or Daharsh lacked the opportunity to intervene. Because Shaw and Daharsh have failed to carry their burden of showing that they could not have prevented Sawaya's conduct, plaintiff's allegations, taken as true, demonstrate a genuine issue of material fact as to whether Shaw or Daharsh had an opportunity to intervene and failed to do so. Robins, 60 F.3d at 1442.

Having concluded that a genuine issue of material fact exists as to whether Shaw and Daharsh failed to intervene, the Court next addresses whether they are entitled to qualified immunity. It is clearly established that prison guards have a duty to stop constitutional violations at the hands of other guards. Id.; see Martinez v. Stanford, 323 F.3d 1178, 1180, 1184 (9th Cir. 2003) (holding that, because the law regarding excessive force was clearly established in 1994, that qualified immunity was improperly granted to officers who allegedly beat an inmate during a cell extraction, despite the inmate's lack of resistance); McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1986) (holding that the Eighth Amendment was violated by an assault while an inmate was not resisting). Here, resolving all factual disputes in favor of plaintiff, the Court concludes that a reasonable officer would know that failing to intervene while another officer yanked and twisted plaintiff's arm, and slammed plaintiff's head against the cell bars was clearly unlawful. Accordingly, Shaw and Daharsh are not entitled to qualified immunity.

In sum, accepting plaintiff's allegations as true and drawing all inferences therefrom in his favor, there is a genuine issue of material fact as to whether Shaw and Daharsh violated plaintiff's clearly established constitutional rights. Therefore, Shaw and Daharsh are not entitled to summary judgment either on the grounds of qualified immunity or on the grounds that they did not violate plaintiff's constitutional rights.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment is DENIED.

2. The case is hereby REFERRED to Magistrate Judge Nandor Vadas for settlement proceedings. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk is directed to serve Magistrate Judge Vadas with a copy of this order and to notify Magistrate Judge Vadas that a copy of the Court file can be retrieved from the Court's electronic filing database.

3. In view of the referral, further proceedings in this case are hereby STAYED. If the case is not settled, the Court will enter a new scheduling order for further proceedings.

This order terminates docket nos. 65 and 68.

**IT IS SO ORDERED**.

Dated: October 13, 2013

_____
JON S. TIGAR
United States District Judg